**Simone E. CYR, Plaintiff,**

v.

**Stephen A. PERRY, Administrator U.S. General Services Admin., Defendant.**

**No. CIV.A. 03–913–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 3, 2004.

William Gresby Hughes, III, Judith Lynne Wheat, Shaw Bransford Veilleux & Roth PC, Washington, DC, for Plaintiff.

Arthur Peabody, Jr., United States Attorney's Office, Alexandria, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

At issue at the threshold in this Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, case are the following questions:

(i) whether Congress has waived sovereign immunity for retaliation claims under the ADEA;

(ii) whether a plaintiff, believing at the time of her Equal Employment Opportunity ("EEO") complaint that a single law prohibited all forms of employment discrimination, including age discrimination, may rely on Title VII, 42 U.S.C. § 2000e *et seq.*, to pursue a claim of retaliation in response to a charge of age discrimination;

(iii) whether a plaintiff may recover compensatory damages in an action alleging discrimination and retaliation under the ADEA; and

(iv) whether a plaintiff has a right to a jury trial in an action alleging discrimination and retaliation under the ADEA.

### I.[1]

Plaintiff Simone Cyr, a fifty-six year old long time federal employee (27 years), has

---

1. The facts stated below are derived from the parties' pleadings. The facts as alleged by the plaintiff are accepted as true in considering defendant's motion. *See Hubbard v. Allied Van Lines*, 540 F.2d 1224, 1230 (4th Cir.1976) (accepting plaintiff's factual allegations as true in considering defendant's motion to strike).

served as a Contract Specialist for the General Services Administration ("GSA") in the Federal Systems Integration and Management Center in Alexandria, Virginia since May 1991.

On June 14, 2000, plaintiff responded to a vacancy announcement ("Vacancy 1") by submitting an application for a GSA Contract Specialist position. After reviewing applications for the vacancy, defendant's Human Resources Division ("HRD") determined that plaintiff and two other applicants met the minimum educational and training requirements for the vacancies and were the best qualified applicants. Accordingly, when the applications were forwarded to Timothy McCurdy, the Selecting Official, McCurdy was aware that HRD had concluded that plaintiff was among the best qualified applicants.

Months later, when she had not yet heard anything about the status of her application, plaintiff, in October 2000, asked Mary Whitley, a co-worker and upper level manager, about her application during a golf outing. When Whitley told her that the agency had not yet selected among the applicants, plaintiff expressed concern that the agency might waive the minimum required educational qualifications for the position so that Stacey Lowenberg, a thirty-six year old GSA employee, could be selected instead of plaintiff, and that if that occurred, plaintiff would file an EEO complaint. Plaintiff alleges that McCurdy learned from Whitley or another employee that plaintiff intended to file an EEO complaint in the event this occurred.

Plaintiff's concerns, it appears, were well-founded. McCurdy submitted a written request for a waiver of the minimum educational qualifications for Lowenberg on January 16, 2001. And, when this request was granted on January 18, 2001, McCurdy selected Lowenberg for one of the vacancies. Plaintiff was notified that she was not selected on January 24, 2001. Shortly thereafter, plaintiff requested a meeting with selecting officials to discuss the reasons for her non-selection and a meeting for this purpose was scheduled for January 29, 2001. Forty-five minutes prior to the scheduled January 29 meeting, plaintiff received a hand-delivered notice from Stephen Viar, Director of Acquisitions at the GSA, of a five-day suspension effective January 31, 2001. The scheduled meeting progressed as planned and plaintiff was informed that she was not selected for the vacancy, not because of her age, but instead because her supervisors believed that she did not get along well with peers, clients, contractors, and others.

Shortly after the meeting, Plaintiff contacted an EEO counselor in the GSA's Office of Civil Rights to file an informal complaint alleging (i) discrimination on the basis of age in violation of the ADEA when she was not selected for the vacancy and (ii) retaliation in violation of Title VII when she was suspended. Plaintiff then filed a formal EEO complaint on July 27, 2001, alleging age discrimination and retaliation for the same reasons as alleged in her informal complaint. Moreover, she added a claim of a continuing violation of age discrimination because plaintiff had applied for, but was not selected for, several other Contract Specialist vacancies at the agency since 1991.

On August 17, 2001, plaintiff was notified by McCurdy that the agency had decided to sustain only one of the two charges that had resulted in her suspension, thus reducing the suspension to an official reprimand that would remain in plaintiff's personnel folder for three years. On the same day, McCurdy directed plaintiff to report for a 120–day temporary detail as a Contract Specialist in the agency's Washington, D.C. office. When plaintiff's reassignment became permanent on November 20, 2001, plaintiff amended her

formal EEO complaint to add a claim that her reassignment was also the product of prohibited age discrimination and retaliation.

In early January 2002, plaintiff responded to a second vacancy announcement ("Vacancy 2") by submitting an application for a GSA Contract Specialist position. On June 20, 2002, plaintiff was notified that Imer Gunther, a thirty-eight year old GSA employee with significantly less experience than plaintiff had been selected for the position. As a consequence, plaintiff filed a second, separate informal EEO complaint on June 20, 2002, alleging discrimination on the basis of age in violation of the ADEA and retaliation in response to her prior EEO activity in violation of Title VII and filed a formal complaint on August 28, 2002.

Plaintiff now brings an action in this district alleging that defendant violated the ADEA and Title VII when it:

(i) Discriminated against her on the basis of age in its selection for Vacancy 1 (Count I);

(ii) Retaliated against her by proposing to suspend plaintiff and ultimately, reprimanding her (Count II);

(iii) Retaliated against her by reassigning plaintiff to the agency's Washington, D.C. office (Count III); and

(iv) Discriminated against her on the basis of age and retaliated against her in its selection for Vacancy 2. (Count IV)

Plaintiff seeks damages and injunctive relief. In damages, plaintiff seeks backpay, compensatory damages, and attorney's fees and costs. The injunctive relief sought includes reassignment to the agency's Alexandria, Virginia office, removal of all adverse and disciplinary actions from plaintiff's personnel file, and an injunction against further acts of discrimination and retaliation.

While there is no dispute that plaintiff exhausted her administrative remedies, defendant mounts a threshold challenge to plaintiff's retaliation claims on the grounds: (i) that plaintiff's claims for retaliation under the ADEA are barred by sovereign immunity and (ii) that plaintiff may not pursue her ADEA retaliation claims under Title VII. Defendant also seeks (iii) to dismiss plaintiff's prayer for compensatory damages and (iv) to strike plaintiff's demand for a jury trial. Each of these is separately addressed.

## II.

The doctrine of federal sovereign immunity has a long Supreme Court pedigree. Thus, it has long been settled that the United States remains "immune from suit save as it consents to be sued...." *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) (citations omitted). And it is equally well-settled that the United States cannot be held to have consented to suit and hence waived its sovereign immunity "without an express and unequivocal statutory waiver." [2] The corollary to this settled principle is that a waiver of sovereign immunity may not be implied; nor can "[a] statute's legislative history ... supply a waiver that does not appear clearly in any statutory

**2.** *Research Triangle Inst. v. Bd. of Governors of the Federal Reserve Sys.*, 132 F.3d 985, 987 (4th Cir.1997); *see also Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text...."); *Lewis v. Federal Prison Industries, Inc.*, 953 F.2d 1277, 1282 (11th Cir.1992) (finding that Congress' failure to explicitly authorize attorney's fees in ADEA suits against the government "compels us to determine that Congress did not intend to provide this remedy for public sector litigants"); *Smith v. Office of Personnel Management*, 778 F.2d 258, 261 (5th Cir. 1985) ("A waiver of sovereign immunity must be unequivocally expressed....").

text." *Lane,* 518 U.S. at 192, 116 S.Ct. 2092. It further follows from these principles that in the event of waiver, the scope of the waiver must be "strictly construed" within the scope of the express statutory language. *See id.* ("[A] waiver of the Government's sovereign immunity will be strictly construed in terms of its scope, in favor of the sovereign."); *Lehman,* 453 U.S. at 161, 101 S.Ct. 2698 (citing *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957)).

 Given these settled principles, the search for an answer to the question whether the federal government has waived sovereign immunity for retaliation claims under that ADEA must begin with the language of that statute itself. Thus, § 633a of the ADEA, which is the ADEA section explicitly applicable to the federal government, provides that "[a]ll personnel actions affecting employees ... who are at least 40 years of age... in executive agencies... shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). This provision makes clear, and defendant does not dispute, that the statute expressly and unequivocally waives sovereign immunity with respect to age discrimination suits against federal agencies. *See, e.g., Daniels v. Browner,* 63 F.3d 906, 907 (9th Cir.1995) (finding that the ADEA waived sovereign immunity in a age discrimination suit against the Environmental Protection Agency). Yet, this does not end the analysis; the ADEA does not expressly prohibit retaliation by federal entities; indeed, retaliation is not addressed or mentioned in § 633a or in any other ADEA provision related to discrimination claims against federal entities.[3] Simply put, then, the fact that § 633a clearly waives the federal government's sovereign immunity for age discrimination claims does not dispose of the sovereign immunity issue with respect to retaliation claims. This is so because they are different claims, with different elements and proof requirements.[4] An age discrimination claim requires evidence from which it may be concluded or inferred that the challenged employment practice or decision was infected with an age animus whereas no age animus is required to establish an ADEA retaliation claim; instead such a retaliation claim requires only an adverse employment action caused by an employer's animus against the employee for engaging in protected activity.[5] Given these differences in the claims, it follows that there are likewise different considerations raised by the question of waiving

---

**3.** The only other statutory provision related to federal entities is 29 U.S.C. § 631(b) which provides that the prohibitions of § 633a "shall be limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(b). Like § 633a, this provision does not mention "retaliation."

**4.** *Compare Kozlowski v. Hampton School Bd.,* 77 Fed.Appx. 133, 138, 2003 WL 22273073 (4th Cir.2003) (finding that a plaintiff alleging age discrimination may either offer direct evidence of discrimination or "prove four elements to make out a prima facie case: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that at the time of the adverse employment action she was performing at a level that met her employer's legitimate job expec-

tations; and (4) that the position remained open to or was filled by similarly qualified applicants outside the protected class") *with Jenkins v. Bell South Advertising and Pub. Corp.,* 86 F.3d 1150, 1996 WL 281958, at *1 (4th Cir.1996) (citing *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985)) (finding that to sustain a claim of retaliation against a private entity under the ADEA, a plaintiff must show that: (1) she engaged in protected activity under the ADEA; (2) her employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action).

**5.** *See Jenkins,* 86 F.3d 1150, 1996 WL 281958, at *1.

sovereign immunity for each type of claim. It is therefore reasonable to conclude that Congress was aware of the differences and chose to waive immunity for discrimination claims and not for retaliation claims. Indeed, it is significant that in § 623, which applies to private entities, Congress expressly prohibited retaliation in addition to discrimination.[6] It might easily have chosen to do the same in § 633a, but it did not. In sum, the absence of congressional waiver of sovereign immunity for ADEA retaliation claims against federal entities is confirmed by (i) the absence of an express prohibition of retaliation in the ADEA, (ii) the different elements and proof requirements for age discrimination and retaliation claims, and (iii) the striking contrast of the presence of an express prohibition against retaliation by private entities in § 623(d).

While the Fourth Circuit has not yet resolved the question whether Congress has waived the federal government's sovereign immunity for retaliation claims under the ADEA, two other circuits—the Second and District of Columbia circuits—have addressed this issue and concluded that Congress has in fact waived this sovereign immunity and thus the federal government may be sued for retaliation under the ADEA. *See Forman v. Small,* 271 F.3d 285, 298–99 (D.C.Cir.2001) ("[W]e hold that § 633a waives sovereign immunity as to claims of retaliation."); *Bornholdt v. Brady,* 869 F.2d 57, 62 (2d Cir.1989) ("[I]t may be inferred that the breadth of the language of § 633a, requiring that federal government employment decisions affecting covered personnel be 'free from any discrimination based on age' ..., is sufficiently broad to prohibit age-related retali-

ation...."). In *Bornholdt,* the Second Circuit engaged in no discussion of the rationale for its observation in *dictum* that the federal government waived sovereign immunity for ADEA retaliation claims. While the Second Circuit did not squarely address the issue and thus offers little guidance here, the D.C. Circuit's decision in *Forman* is squarely on point and reflects considerable analysis of this issue. There, the D.C. Circuit reasoned that the "intended breadth" of § 633a compels the conclusion that Congress waived its sovereign immunity for retaliation claims when it prohibited *"any discrimination based on age,"* even though "Congress[ ] fail[ed] to mention 'retaliation' explicitly." *Forman,* 271 F.3d at 296–97. Moreover, the court reasoned that it is only sensible to conclude that Congress intended that § 633a prohibit retaliation because "[i]t is difficult to imagine how a workplace could be 'free from any discrimination based on age' if, in response to an age discrimination claim, a federal employer could fire or take other action that was adverse to an employee" and because the plain language of § 633a does not suggest that Congress intended to provide fewer protections for age discrimination in the federal workplace than in the private workplace. *Id.* at 297. In other words, the D.C. Circuit found an implied waiver of sovereign immunity.

Yet, *Forman* and *Bornholdt* are unpersuasive because both courts determined that Congress waived sovereign immunity based on the perceived breadth or generality of § 633a, and not based on any express or unequivocal statutory language, as Supreme Court authority requires. *See Lane,* 518 U.S. at 192, 116 S.Ct. 2092 (requiring that waiver of the federal gov-

---

**6.** 29 U.S.C. § 623(d) provides as follows:
It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment... because such individual... has opposed any prac-

tice made unlawful by this section, or because such individual... has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or litigation under this chapter.

ernment's sovereign immunity be "unequivocally expressed in the statutory text"); *Research Triangle Inst.,* 132 F.3d at 987. Because the ADEA's statutory language does not even mention or address retaliation, let alone expressly and unequivocally waive sovereign immunity with regard to retaliation claims, it is not proper to conclude that the government has waived sovereign immunity in this respect. Nor is it proper to infer a waiver based on the breadth of the statutory language or speculations about congressional intent. Such inferences and speculations have no place in federal sovereign immunity law. *See Lane,* 518 U.S. at 192, 116 S.Ct. 2092; *Research Triangle Inst.,* 132 F.3d at 987.

Plaintiff offers several unpersuasive arguments in an attempt to avoid the conclusion that her retaliation claims are barred by sovereign immunity. Plaintiff argues first, as in *Forman,* that the statutory language which prohibits *"any* discrimination based on age," and not just "discrimination based on age," includes a statutory prohibition against retaliation. 29 U.S.C. § 633a (emphasis added). Yet, there are no reasonable grounds to conclude that "retaliation" is a form of "discrimination based on age" because, as noted, retaliation is a different claim with different elements and can be established without a showing of age animus.[7]

■ Plaintiff also points to federal regulations which provide that "[n]o [federal employee] shall be subject to retaliation for opposing any practice made unlawful by... the Age Discrimination in Employment Act," 29 C.F.R. § 1614.101, as evidence that the federal government waived sovereign immunity with regard to retaliation claims under the ADEA. While it is true that an agency's interpretation of its statute is entitled to deference in appropriate circumstances,[8] that deference is not due here. Settled precedent makes clear that regulations cannot supply a waiver of sovereign immunity; instead, waiver must be found explicitly and unequivocally in the statute. *See Lane,* 518 U.S. at 192, 116 S.Ct. 2092; *Research Triangle Inst.,* 132 F.3d at 987.

Finally, plaintiff argues that the federal government must be held to have waived sovereign immunity for retaliation claims under the ADEA because courts have found sovereign immunity waiver under Title VII. *See Holmes v. West,* 210 F.3d 361, 2000 WL 365400, at *4 (4th Cir.2000); *Ayon v. Sampson,* 547 F.2d 446, 449 (9th Cir.1976); *Copes v. Henderson,* 2001 WL 812353, at *4, 2001 U.S. Dist. LEXIS 10643, at *13–14 (D.Md. July 17, 2001); *Theard v. United States Army,* 653 F.Supp. 536, 544–45 (M.D.N.C.1987). Yet, these courts have relied on language in 42 U.S.C. § 2000e–16, which prohibits discrimination by federal entities, and incorporates language from other provisions of the statute that expressly and unequivocally prohibits retaliation. *See* 42 U.S.C. § 2000e–16(d);[9] *Ayon,* 547 F.2d at 449–50.

---

**7.** *See supra* note 4; *see also Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir.1989) ("Retaliation and discrimination are separate wrongs. A white person who opposes discrimination against blacks and is fired in retaliation for doing so is not being discriminated against because of his race....").

**8.** *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

**9.** 42 U.S.C. § 2000e–16(d) provides that "[t]he provisions of section 2000e–5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder...." 42 U.S.C. § 2000e–5(g)(2)(A) provides as follows:

No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused

The ADEA does not contain such language.

In sum, because § 633a of the ADEA contains no express and unequivocal language that waives sovereign immunity with respect to retaliation claims, plaintiff's claims for retaliation under the ADEA are barred by sovereign immunity and must be dismissed.

### III.

■ Plaintiff argues that even assuming, *arguendo,* that her claims for retaliation under the ADEA are barred by sovereign immunity, plaintiff's retaliation claims must not be dismissed because plaintiff may nonetheless pursue her retaliation claims under Title VII, which waives sovereign immunity for retaliation claims. *See Holmes,* 210 F.3d 361, 2000 WL 365400, at *4 (allowing a retaliation claim against a federal entity under Title VII); *Ayon,* 547 F.2d 446, 449 (same); *Copes,* 2001 WL 812353, at *4, 2001 U.S. Dist. LEXIS 10643, at *13–14 (same); *Theard,* 653 F.Supp. 536, 544–45 (same). Title VII does not expressly authorize retaliation

claims in response to protected activity opposing age discrimination because it only makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice *by this subchapter....* " *See* 42 U.S.C. § 2000e–3(a) (emphasis added). Yet, controlling authority makes clear that a plaintiff may bring a claim of retaliation in response to complaints of age discrimination under Title VII "if the plaintiff held a *reasonable, good faith belief* that the employment practice he opposed violated Title VII." [10] Plaintiff asserts here that her belief that she could pursue all claims of discrimination and retaliation under the same statute was both (i) reasonable and (ii) in good faith.[11]

■ While there is no reason to doubt that plaintiff's belief was held in good faith, there are compelling reasons to conclude that her belief was unreasonable on two distinct, but related, grounds. First, controlling authority establishes that a plaintiff's belief that a claim is actionable under Title VII is unreasonable only if there is a "lack of conflicting authority"

---

admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin *or in violation of section 2000e–3(a) of this title.*

42 U.S.C. § 2000e–5(g) (emphasis added). 42 U.S.C. § 2000e–3(a) prohibits retaliation and provides as follows:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment,... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

**10.** *See Dea v. Washington Suburban Sanitary Commission,* 11 Fed.Appx. 352, 357–58 (4th

Cir.2001) (emphasis added); *see also Mayo v. Kiwest Corp.,* 94 F.3d 641, 1996 WL 460769, at *4 (4th Cir.1996); *Beinlich v. Curry Development, Inc.,* 54 F.3d 772 n. 2, 1995 WL 311577, *3 n. 2, 1995 U.S.App. LEXIS 12109, at *7 n. 2 (4th Cir.1995); *Adams v. Giant Food, Inc.,* 225 F.Supp.2d 600, 606 (D.Md. 2002); *Blackburn v. Commonwealth of Virginia Dept. of Corrections,* 2002 WL 242352, at *2, 2002 U.S. Dist. LEXIS 2682, at *6 (W.D.Va. Feb. 19, 2002).

**11.** In support of her argument, plaintiff submits an affidavit in which she alleges that when she filed her EEO complaint:

I did not know the difference between Title VII ... and the Age Discrimination in Employment Act.... I was only aware that there was a general law that made discrimination based on bases such as age, sex, and race illegal. I believed that all discrimination was covered under the same law, but I did not know which law.

supporting plaintiff's belief. *See Mayo*, 94 F.3d 641, 1996 WL 460769, at *4 ("The lack of conflicting authority supports a finding that Mayo was not reasonable in believing that his claim was actionable."). Here, plaintiff's belief was unreasonable because there is no authority that supports the claim that plaintiff may pursue an age discrimination claim under Title VII; clearly plaintiff cannot do so. *See* 42 U.S.C. § 2000e–16(a). Moreover, plaintiff argues unpersuasively that her ignorance regarding employment discrimination laws amounts to reasonableness. The short and dispositive answer to this argument is that subjective ignorance cannot create objective reasonableness. If a belief is unreasonable, plaintiff's ignorance in believing it does not make it reasonable.

In sum, plaintiff may not bring her claims of retaliation in response to her complaints of age discrimination under Title VII because her good faith belief that she could pursue her claims under Title VII was unreasonable.[12]

### IV.

■ In her complaint, plaintiff seeks $300,000 compensatory damages for her claims, including retaliation. Yet, courts have uniformly held that "the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress." *Commissioner v. Schleier*, 515 U.S. 323, 326, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) (citing supporting caselaw from all circuits); *see also Slatin v. Stanford Research Inst.*, 590 F.2d 1292, 1296 (4th Cir.1979) ("The Supreme Court's

decision in *Lorillard v. Pons* ... lends added strength to the finding that pain and suffering damages should not be allowed in ADEA actions."). Thus, plaintiff may not recover compensatory damages, including damages for pain and suffering or emotional distress. Plaintiff is not, however, precluded from recovering back pay. *See Sailor v. Hubbell, Inc.*, 4 F.3d 323, 325–26 (4th Cir.1993) (allowing recovery of back pay under the ADEA).

### V.

■ In her complaint, plaintiff requests trial by jury for all her claims. This request must be rejected. In *Lehman v. Nakshian*, 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981), the Supreme Court made clear that because the United States is "immune from suit save as it consents to be sued,"[13] a plaintiff does not have a right to trial by jury in an action against the federal government unless trial by jury is "one of 'the terms of [the Government's] consent to be sued.'" *Id.* at 160, 101 S.Ct. 2698 (citing *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). Like waiver of sovereign immunity, the government's consent to trial by jury must be "unequivocally expressed" in the statute. *Id.* (citing *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980)). Analysis of the ADEA establishes that "Congress did not intend to confer a right to trial by jury on ADEA plaintiffs proceeding against the Federal Government." *Id.* at 165, 101 S.Ct. 2698. Therefore, plaintiff does not have a right to a jury trial for her claims

12. Because plaintiff's claims must be dismissed on both grounds discussed above, it is not necessary to reach the question whether plaintiff's remark to Mary Whitley, a GSA manager, while golfing, which plaintiff asserts

led to her proposed suspension and reprimand, is "protected activity."

13. *Lehman*, 453 U.S. at 160, 101 S.Ct. 2698 (citations omitted).

and defendant's motion to strike plaintiff's jury demand must be granted.

An appropriate order will issue.